IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY DEAN OWREN                                                                                          PLAINTIFF
#137407

v.                                            4:21-cv-00927-KGB-JJV

PHILLIP MILLER, Sheriff; and
CLAYTON EDWARDS, Captain,
White County Detention Center                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**DISPOSITION**

**I.      DISCUSSION**

Bradley Dean Owren ("Plaintiff") is a pretrial detainee at the White County Detention Facility ("WCDF").  He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging that around September 2, 2021, Defendant Captain Clayton Edwards violated his due process rights by intentionally moving detainees who had tested positive for Covid-19 into his pod while he did not have that disease.  (Doc. 2 at 4.)   On November 17, 2021, I issued a Partial Recommended Disposition suggesting Defendant Sheriff Phillip Miller be dismissed without

1

prejudice from this lawsuit because Plaintiff failed to state a claim upon which relief may be granted against him. (Doc. 5.) That Partial Recommended Disposition is still pending.

Defendant Edwards has filed a Motion for Summary Judgment arguing he should be dismissed without prejudice because Plaintiff did not properly exhaust his administrative remedies. (Docs. 16-18.) Plaintiff has not filed a Response.[1] After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's claim against Defendant Edwards be DISMISSED WITHOUT PREJUDICE, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence

---

[1] Because Plaintiff has not filed a Statement of Disputed Facts, the facts in Defendant's Statement of Indisputable Facts (Doc. 18) are deemed admitted. *See* Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party"); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (pursuant to Local Rule 56.1(c), a plaintiff who failed to respond to the motion for summary judgment "forfeited her ability to contest the facts presented" by the defendant).

2

is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

#### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

B. **WCDF's Grievance Procedure**

The WCDF has different procedures for filing "requests" and "grievances." (Doc. 18-1, Doc. 18-6.) A request is defined as "merely a detainee asking for something which aids or assists the detainee in their stay at the facility. <u>Denial of which would not create a constitutional issue or deprivation</u>." (Doc. 18-6 at 2) (emphasis added.) Requests must be filed on the computerized kiosk system, and the top of the computerized form is labeled according to the matter being requested, i.e., "commissary issues," "court related," "indigent," "sick call request," etc. (*Id*.; Doc. 18-3.) A request must be answered within ten working days or within forty-eight hours if it involves an emergency. (Doc. 18-6 at 3.)

In contrast, a grievance is defined as "a <u>formal written allegation</u> or accusation, suggesting that a detainee has been mistreated, neglected, abused or deprived of something unlawful, or an action which is a violation of department rules and regulations." (*Id.* at 2) (emphasis added.) Grievances may be filed on "any type of paper" or on a "complaint/grievance form" through the computerized kiosk system. (*Id*.) A grievance filed on the kiosk system is labeled "Grievance" at the top of the form and submitted to the appropriate staff member. (Doc. 18-3 at 69-91.) If the grievance is handwritten, it must be folded in half or put in an envelope with the word "grievance" clearly written on the outside and given to the Jail Administrator. (Doc. 18-6 at 3.) A grievance must be answered in writing within ten working days or within forty-eight hours if the grieved matter is an emergency. (*Id*. at 3.) "A grievant," which is defined as "a Detainee who has written a grievance," may appeal a response, or lack thereof, to the Sheriff which is the final step in the process. (*Id*.)

C. **Plaintiff's Requests & Grievances**

Defendant Edwards says that, since Plaintiff was booked into the WCDF in August 2020,

4

he has filed approximately 270 requests about various matters. (Doc. 18 at ¶ 9.) However, according to Defendant, only two requests mention the allegations raised in the Complaint. (*Id*. at ¶ 19-24.) Plaintiff has not offered any contrary evidence, and my review of the Plaintiff's jail file confirms this to be correct. (Doc. 18-3.)

> On August 31, 2021, Plaintiff filed a request labeled "Other" saying:
>
> Yes in in k-pod and i did not test positive for covid. But the whole pod is on 24 hour lock down to were i can't call my lawyer or bondsman or get my lawyer visits. . how long will I have to be like this before i can get my time oumy cell again or get my lawyer visits..anwhyr people with covid being kept with us that dont have it thank you for ur time.

(Doc. 18-3 at 270.) A non-party responded: "That is up to the Captain and Medical." (*Id*.) On September 1, 2021, Plaintiff filed another request labeled "Other" that said:

> Yes I'm here in k-pod and i did not test positive for covid but imon 24 hour lock down to were I can not call my lawyer or bondsman or get my lawyer visits again because of covid quarantine i got a jury trial coming up andi have a private lawyer not a public defender that's out of bentoni need to be able to see my lawyer I've been on covid quarantine 2 times not in the last 30 daysand idont have it this crazy and whyr the one who tested positive for it being kept in the same pod as us??

(*Id*. at 271.) Defendant Edwards responded: "No where else to house them and you would have already been exposed." (*Id*.)

Defendant Edwards also says Plaintiff filed approximately twenty-two grievances, but none of them mention Covid positive detainees being in Plaintiff's pod. (Doc. 18 at ¶ 10-12, 25.) There is no contrary evidence in the record. (Doc. 18-3 at 69-91.) Instead, the grievances Plaintiff filed around September 1, 2021 (which is when he was allegedly housed with Covid positive detainees) deal with him not being able to watch television, call his family, or have full recreation privileges because his pod was placed on lockdown for inappropriate behavior. (*Id*. at 88, 89.)

Defendant Edwards argues this lawsuit should be dismissed because Plaintiff failed to

5

properly raise his claim by filing a grievance, instead of a request, about the Covid positive detainees being in his pod. I agree. The law is clear. To satisfy the PLRA's exhaustion requirement, a prisoner must fully and properly comply with the incarcerating facility's rules. *See Jones,* 549 U.S. at 218; *see also Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion").

Here, it is undisputed the WCDF had a separate procedure for filing: (1) a "request" "asking for something"; or (2) a "grievance," which is a "formal written allegation or accusation" that a detainee has been "mistreated, neglected, abused," "deprived of something lawful," or subject to a violation of "department rules or regulations." (Doc. 18-6 at 2.) And, it is clear from the record that Plaintiff was familiar with the difference in the two procedures. For instance, on December 23 and 29, 2020, Plaintiff filed two "requests" saying he needed "indigent" or free writing supplies so that he could contact his lawyer and family. (Doc. 18-3 at 115-116.) Thereafter, on January 1, 2021, Plaintiff filed a "grievance" saying he had not received indigent supplies in response to his requests. (*Id*. at 73.) Similarly, on December 8, 2021, Plaintiff filed a "request" asking that several lawyers be put on his approved call list. (*Id*. at 68.) When Plaintiff was unhappy with the response, he filed a grievance, on December 11, 2021, specifically referring to his request, by number, and pursuing the matter further. (*Id*. at 90.)

If Plaintiff was displeased with the responses he received to his August 31 and September 1, 2021 requests about Covid positive inmates in his pod, the WCDF's policy (of which Plaintiff was well familiar) required him to file a grievance formerly challenging his housing assignment. Because Plaintiff did not do so, he failed to properly exhaust his administrative remedies regarding

the claim he is attempting to pursue against Defendant Edwards in this federal lawsuit.

Proper exhaustion is "mandatory," and courts cannot consider the merits of a prisoner's claims until that hurdle has been cleared. *Jones,* 549 U.S. at 211. The only exception to this requirement is if administrative remedies were "unavailable," such as when the prison grievance procedure is "so opaque that it becomes . . . incapable of use," or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 136 S. Ct. 1850, 1859-60 (2016); *Townsend v. Murphy,* 898 F.3d 780, 783 (8th Cir. 2018). Plaintiff has not presented any facts or evidence suggesting administrative remedies were unavailable to him. To the contrary, the record demonstrates Plaintiff knew how to properly use the WCDF's grievance procedure and did so several times before filing this action. For these reasons, I conclude Plaintiff had administrative remedies available to him that he failed to properly exhaust. Accordingly, I recommend Defendant Edwards's Motion for Summary Judgment be granted.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant's Motion for Summary Judgment (Doc. 16) be GRANTED, Plaintiff's claim against Defendant Edwards be DISMISSED without prejudice due to a lack of exhaustion, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order and Judgment adopting these recommendations would not be taken in good faith.

DATED this 29th day of March 2022.

                                              JOE J. VOLPE
                                              UNITED STATES MAGISTRATE JUDGE